No. 3888

Second Circuit

WEST ET AL. v. GREEN

(December 23, 1930. Opinion and Decree.)

See, also, 10 La. App. 707, 122 So. 128.

C. J. Ellis, Jr., and Warren Hunt, of Rayville, attorneys for plaintiffs, appellants.

George Wesley Smith and T. H. McGregor, of Rayville, attorneys for defendant, appellee.

ODOM, J. This is a petitory action involving the title to the N. W. ¼ of the N. W. ¼, section 11, township 18 north, range 7 east, situated in the parish of Richland. The plaintiffs are Mrs. M. E. West, the surviving widow in community of J. B. West, and Mrs. Ethelyn Brent, Mrs. Margaret West Morris, and Mrs. Dorothy West Barham, sole heirs of J. B. West. They allege that they are the owners of the property which was acquired by the said J. B. West under two deeds, one from the succession of Charles Chaffe, conveying an undivided five-eighths interest therein, and the other from the succession of John Powell, conveying the other three-eighths interest therein, which deeds are dated November 2, 1896, and duly recorded in Conveyance Record Book P, pages 38 and 39, of the Parish of Richland. They trace their title back to the United States through what is alleged to be an unbroken chain of transfers.

They further allege that the defendant, W. M. Green, is in possession of the said property without right or title, and they pray for judgment recognizing them as the owners of said property and entitled to possession.

The defendant, Green, admitted in answer that he was in possession of the property, but denied generally and specially plaintiffs' allegations of ownership, and affirmatively alleged that he was the owner of the property under title which he acquired from C. B. Paul by deed dated April 10, 1917, and duly recorded on September 24 of that year in Conveyance Record Book 31, page 583, of Richland parish, and further that he had acquired the property in good faith and in good faith had taken corporeal possession of it more than ten years previous to the date on which this suit was filed, and that he had in good faith continued to possess it without interruption down to the present time, and he pleaded ten-year prescription.

On the first trial of the case there was judgment in the lower court for plaintiff, and defendant appealed. When the case came on for hearing in this court, it was suggested that one of the plaintiffs, Mrs. M. E. West, was dead, but neither her attorneys nor those for defendant knew the

date of her death, and the case was remanded to the district court for the purpose stated in our opinion handed down on May 8, 1929. See West et al. v. Green, 10 La. App. 707, 122 So. 128.

It developed that Mrs. West died after the trial in the district court, but before judgment was signed. The judgment of the lower court was therefore null, having been rendered in favor of a dead person.

Upon proper application, the heirs of Mrs. West were made parties in the district court, whereupon counsel for plaintiff moved that the case be reset and for judgment on the testimony previously taken, and the court fixed the case for January 29, 1930. On the latter date counsel for plaintiff called up their motion, but before a ruling was made counsel for defendant moved to re-open the case for the introduction of further testimony, which motion was granted and the case re-opened for a. purposes, all over plaintiffs' objection.

The case was again set for trial, and counsel for plaintiffs offered in evidence the testimony taken on the previous trial and rested their case. The defendant called and examined some five or six witnesses who had not testified on the previous trial, but plaintiffs offered no additional testimony. On the second trial there was judgment for defendant, and plaintiffs appealed. In this court counsel for plaintiffs suggest the following errors:

(1) That the trial judge had no right to grant a new trial; and (2) that the judgment is not supported by the record.

On the first point counsel argue that, under the ruling of this court remanding the case, no further testimony could be introduced. We cannot concur in that view.

The case was remanded to the district court to be reinstated on the docket in the precise situation it was when Mrs. West died. It developed that she died after the case was tried but before judgment was rendered; therefore the judgment was null as being rendered in favor of a dead person. After the heirs of Mrs. West were made parties in the district court, the case could have been re-submitted and judgment rendered on the testimony previously taken. But the district judge was authorized to re-open the case for the introduction of additional testimony under proper showing.

Under article 557 et seq., of the Code of Practice, and Act No. 10 of 1926, p. 11, courts may grant new trial within three judicial days upon the application of the party who believes himself aggrieved, and he must do so "if there is a good cause for same."

Article 560 of the Code provides that a new trial shall be granted "if the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before."

Defendant in his application for a new trial set out that he had since the trial discovered new evidence material and important to his cause which he could not with diligence have obtained before, and attached to his application the affidavits of several witnesses showing what they would swear to if called. The minutes disclose that the motion for a new trial was set down, taken up, tried, and allowed. The testimony adduced on the trial of the motion, if any, is not before us, but we must assume that it was sufficient to warrant the ruling of the trial judge. The granting of new trials is a matter which addresses itself largely to the discretion of

the trial judge, and appellate courts will not interfere unless their rulings are manifestly arbitrary.

## ON THE MERITS

The land in controversy is what is known as swamp land, and was selected by the state as such on May 17, 1858, under the Act of March 2, 1849 (9 Stat. 352), and the selection was finally approved. It was purchased from the state by Robert Boyd on May 21, 1858, and state patent was issued to him.

From Boyd title passed to the Homer College by tax sale in 1872, and by Homer College to the state by tax forfeiture in 1878. This tax forfeiture seems' to have been ignored, because two years later the Homer College sold the land by notarial act to George Gill and ten years later George Gill sold to George G. Gill. On July 27, 1891, the land passed from George G. Gill to Chaffe and Powell under a writ of seizure and sale executed by the sheriff, and on November 2, 1896, an undivided five-eighths interest therein passed from the succession of Chaffe to Joseph B. West, and on the same day West acquired the other three-eighths interest therein from the succession of Powell. The property seems to have fallen into the community which existed between Joseph B. West and his wife, Mrs. M. E. West, and in the dissolution of the community by the death of West, his interest was inherited by his three daughters, who with their mother are plaintiffs in this suit.

There is nothing in the testimony to show that either the plaintiffs or any of their authors in title ever had more than civil possession of the land. No attempt was made by them to show corporeal possession, and it is alleged that defendant was in possession at the time the suit was filed.

Defendant now possesses and claims to own the land under a chain of title which traces back to the state. In the year 1882 the land was advertised for sale for the taxes due thereon prior to that year by one Richard Pritchard, and, there being no bidder, it was bought in by the sheriff for the state under Act No. 98 of 1882. Later in the same year the same property was advertised for the unpaid taxes due by Christopher Paulson, and under the same act was bought in for the state by the sheriff in the absence of a bidder.

In June, 1889, it was transferred by the state through the auditor to the Tensas basin levee board under Act No. 77 of 1888 and by the levee board to the Tensas Delta Land Company in 1898.

In the year 1908 the Tensas Delta Land Company sold the land to C. B. Paul, a resident of Arkansas, but the deed was lost and never recorded. Paul, however, seems to have gone into corporeal possession of it in 1908 or 1909 by cutting down and removing the merchantable timber. The Tensas Delta Land Company executed another deed to Paul dated September 14, 1917, and recorded September 22, in lieu of the one lost.

On April 10, 1917, some months prior to the date on which he got his second deed from the Tensas Delta Land Company, C. B. Paul sold the land to the defendant, Green, by notarial act, duly recorded in the conveyance records of Richland parish on September 24 following. The deed recites that the property is sold under full warranty of title and for a consideration of $200 cash.

Defendant now asserts ownership of the land under this deed and especially alleged in his answer that he went into corporeal possession thereof in good faith

more than ten years prior to the date on which this suit was filed, and that he remained in possession continuously and without interruption up to the present time, and he pleads ten-year prescription under art. 3478 of the Civil Code.

It is argued by counsel for plaintiffs, and it is probably true, that plaintiffs have the better paper title to this property. But it is undisputed that defendant's deed from C. B. Paul, dated April 10 and recorded September 24, 1917, is regular in form, translative of property, and is sufficient to form the basis of ten-year prescription, and, as already stated, it is not contended that either plaintiffs or any of their authors in title ever had corporeal possession of the land.

So that, if it be true as a matter of fact that defendant acquired the land in good faith and in good faith went into corporeal possession of it more than ten years previous to the date this suit was filed and corporeally detained it continuously and without interruption up to the date of this suit as he alleged and now contends, his title is good regardless of the fact that plaintiff may have the better record title. Civil Code, art. 3478 et seq.

That defendant, Green, purchased this property in good faith and in good faith took corporeal possession of it under the deed more than ten years previous to the date on which this suit was filed, and that he remained in physical possession of it continuously and without interruption down to the date of the trial, is proved to our entire satisfaction. He testified that C. B. Paul had bought the property in 1908 and had cut and removed the merchantable timber therefrom in that year or in the year 1909, and that before purchasing it from Paul he had an abstract made and was told by the party who made the abstract that the title was good. He says he thought it was good, and we think his conduct then and thereafter shows that he thought so. The testimony shows beyond question that in the latter part of 1917 he fenced, began to clear the land and to erect a tenant house thereon at an expense of more than $600. In addition to the testimony of defendant that he went into physical possession of this property and began to improve it in the fall of 1917, we have the testimony of four or five witnesses to the same effect. Mr. Blatchford, a surveyor, located the lines and the corners, he said, in the year 1916 or 1917. Mr. Balfour, who entered the World War in February, 1918, testified that defendant began to clear and fence the land and to build a house thereon previous to that date. Guy Graham testified that the land was fenced in December, 1917; that he was engaged in the logging business in the vicinity of the land and hauled logs across the land, and, in order to do so, he had to remove a panel of the fence; that at that time the land was partially cleared and partially fenced; that there was a pump and a house partially built.

Jerry Roberts hauled logs through the place in the fall of 1917. He was able to fix the date because it was previous to his entering the World War in May, 1918. Two colored people were called, and each testified that defendant began to make improvements on the property in the latter part of 1917.

The testimony shows conclusively that defendant remained in possession without interruption down to the date on which this suit was tried.

For the reasons assigned, the judgment appealed from is affirmed, with costs in both courts.